IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR. No: 0:12-440-JFA-1 |
| vs. | ORDER ON MOTION TO SUPPRESS |
| DERRICK ANTONIO MCILWAIN. | |

This matter comes before the Court on the defendant's motion to suppress the evidence seized during a search of a vehicle he was operating on March 19, 2011 in Lancaster, South Carolina. The defendant claims that both the initial stop of this vehicle and the subsequent inventory search thereof violated his rights under the Fourth Amendment. The Court has reviewed the record and the memoranda of counsel and considered the testimony and arguments presented at the motion hearing held on October 3, 2012. For the reasons set forth below, the Court grants defendant's motion.

## FACTUAL BACKGROUND

The following facts appear to be largely undisputed. The Lancaster City Police Department, as part of an investigation into complaints of speeding, assigned Officers Robert Hildreth and Kenneth Warlick to monitor traffic along Hampton Road in Lancaster, South Carolina. Officers Hildreth and Warlick operated separate patrol cars. A then-Cadet, Jaquavis Tucker, accompanied Officer Hildreth in Hildreth's patrol car.

Around noon on March 19, 2011, Officer Warlick stopped a vehicle for a traffic violation, and Officer Hildreth provided backup. While making this stop, the officers

heard loud music coming from a distance away, but they could not initially identify its source. Officer Hildreth left Officer Warlick's vehicle to investigate the loud music. As Officer Hildreth returned to his patrol car, he identified an approaching vehicle, a Honda Accord, as the source of the music. Defendant McIlwain was driving this vehicle, and upon seeing Officer Hildreth, McIlwain turned his music down, pulled off of Hampton Road into a driveway near Officer Hildreth's patrol car, and parked the vehicle. Officer Hildreth then backed his patrol car in behind the Accord and engaged McIlwain.

McIlwain, who did not have his driver's license, initially provided Officer Hildreth with a false name and date of birth. McIlwain also provided Officer Hildreth with the vehicle's registration, which indicated that the Accord was registered to Latwanyept Stover (McIlwain's fiancée). Officer Hildreth returned to his patrol car to check the driver's license information associated with the false name, leaving McIlwain in the Accord. By this point Officer Warlick had completed his traffic stop, so he walked over to the passenger side of Officer Hildreth's patrol car to assist Officer Hildreth.

The South Carolina Department of Motor Vehicles did not have any information associated with the false name on file, so Officer Hildreth went back to the Accord to investigate the discrepancy. Defendant McIlwain then provided Officer Hildreth with his correct name and birth date, and as a result, Officer Hildreth advised McIlwain that he would be placed in investigative detention. Officer Hildreth then handcuffed McIlwain and escorted him back to the rear seat of the patrol car. Checking the new information

McIlwain provided, Officer Hildreth discovered that McIlwain's driver's license was suspended and placed McIlwain under arrest.

Officer Hildreth then instructed Officer Warlick to begin an inventory of the Accord. At about the same time, Officer Hildreth sent for a tow truck to have the Accord towed from the scene, with the expectation that the inventory would be complete by the time the tow truck arrived. During the inventory search, Officer Warlick found in the Accord's glove compartment a pistol having a partially obliterated serial number, a pill bottle containing baggies of crack cocaine, and a white plastic bag containing marijuana. The vehicle was towed once the tow truck arrived.

In dispute, however, is the time at which Ms. Stover, the Accord's owner, arrived at the scene. As discussed in more detail below, this is important because the reasonableness of the inventory search in this case turns on whether Ms. Stover was on-scene at the time of McIlwain's arrest, before the inventory search began. According to Ms. Stover, she arrived on-scene while McIlwain was in investigative detention, prior to the inventory search. She told Officer Hildreth that she owned the Accord, and Officer Hildreth instructed her to remain on the porch of a house at the scene while the officers were investigating McIlwain's driver's license information.

Contrarily, according to Officer Hildreth, Ms. Stover was not present at the time the defendant was placed in investigative detention, at the time of his arrest, at the time the tow truck was called, or at the time the inventory search began. Rather, Ms. Stover arrived some time during the inventory search, but after Officer Warlick had already

located the drugs and gun.  Officers Warlick and Tucker likewise testified that Ms. Stover arrived after the inventory search began.

## DISCUSSION

As noted above, the defendant argues that this Court should suppress the firearm and drugs seized from Stover's vehicle as fruits of an illegal search.[1]  To justify its warrantless search of Stover's vehicle, the Government relies solely on the exception to the warrant requirement for administrative inventory searches.

In general, "to satisfy the Fourth Amendment, inventory searches must be conducted pursuant to "reasonable police regulations . . . administered in good faith." *Colorado v. Bertine*, 479 U.S. 367, 374 (1987).  Thus, "an inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence."  *Florida v. Wells*, 495 U.S. 1, 4 (1990).  Reasonable police regulations may be proven "by reference to either written rules and regulations or testimony regarding standard practices."  *United States v. Matthews*, 591 F.3d 230, 235 (4th Cir. 2009) (internal quotation marks omitted). The Supreme Court has upheld the reasonableness of inventory searches because of the "diminished expectation of privacy in an automobile" and because of the "strong governmental interests" in protecting an owner's property while it is in the custody of the police, in insuring against claims of lost, stolen, or vandalized property, and in guarding the police from danger. *Bertine*, 479 U.S. at 371–72.

---

[1] In his motion to suppress, defendant argues that both the inventory search *and* the initial stop were illegal under the Fourth Amendment and hence are independent grounds on which this Court should suppress the evidence seized. Because the Court finds that the inventory search was unreasonable, it is not necessary to address the legality of the initial stop.

Further, the Supreme Court has recognized the need for "standardized criteria" in the impoundment process. *Id.* at 374 n.6, 375–76. Although police may exercise discretion in determining how to store or secure a vehicle, that "discretion [must be] exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity." *Id.* at 375; *see also United States v. Brown*, 787 F.2d 929, 932 (4th Cir. 1986) (noting that the question "is not whether there was a need for the police to impound [the] vehicle but, rather, whether the police officer's decision to impound was reasonable under the circumstances"). Thus, "[f]or an inventory search to be lawful, the vehicle searched must be in the lawful custody of the police." *United States v. Murphy*, 552 F.3d 405, 412 (4th Cir. 2009); *see South Dakota v. Opperman*, 428 U.S. 364, 373 (1976) (stating that the Supreme Court "has consistently sustained police intrusions into automobiles impounded or otherwise in lawful police custody where the process is aimed at securing or protecting the car and its contents"); *Brown*, 787 F.2d at 932 ("If the vehicle is in lawful custody, the police may inventory the vehicle, if such inventories are routine and conducted pursuant to standard police procedures, so long as the purpose of the inventory is to secure the car or its contents and not to gather incriminating evidence against the owner."). Correspondingly, "[a]n on-site inventory search, as opposed to one that is conducted at an impound lot, is permissible so long as the officer had the initial authority to impound the vehicle." *United States v.*

5

*Chambers*, 59 Fed. App'x 509, 510 (4th Cir. 2003) (citing *United States v. Williams*, 936 F.2d 1243, 1248–49 (11th Cir. 1991)); *see Bertine*, 479 U.S. at 368–69.

In this case, the defendant argues that the Lancaster City Police officers did not have lawful custody of Ms. Stover's vehicle (and thus that the inventory search was unlawful) because she was on-scene at the time of his arrest, prior to the inventory search. Here, however, the Court does not have the benefit of police video or radio recordings which might have specified the precise time of Ms. Stover's arrival. Hence, to resolve whether the inventory search in this case was reasonable under the above authorities, it is first necessary to weigh the conflicting testimony regarding Ms. Stover's arrival at the scene. Both parties agree that she was present at some point during the inventory search—the question is just how early she arrived.

Based on careful observation of the testimony presented at the hearing held on October 3, 2012, the Court credits Ms. Stover's testimony and finds that she was present at the time of McIlwain's arrest and before the inventory search occurred. First, Ms. Stover claimed to have witnessed both the investigative detention of McIlwain and the subsequent inventory search, and her description of these events appears consistent with the officers' testimony on the same topics. In contrast, although Officer Hildreth appeared certain during the hearing of the timing of events, he also testified that he remembered telling an agent of the Bureau of Alcohol, Tobacco, Firearms and Explosives prior to the hearing that he was uncertain whether Ms. Stover was already at the scene when he called for a tow truck. Further, the defendant impeached Officer Hildreth's

testimony via an incident report Officer Hildreth prepared subsequent to McIlwain's arrest.[2]  In particular, although Officer Hildreth testified that Ms. Stover arrived some time *after* the inventory search began, he acknowledged that his report states that Ms. Stover arrived *before* the search began.  Additionally, the testimony of Officers Warlick and Tucker—while being mostly corroborative of Officer Hildreth's version of events— in neither case appeared to reflect an independent recollection of the day in question. Therefore, although it is a close question, the Court resolves the credibility determination against the Government.

Because it finds that Ms. Stover was present at the time of McIlwain's arrest and before the inventory search occurred, the Court must conclude that the inventory search in this case violated the Fourth Amendment.  As explained above, police must have lawful custody of a vehicle before an inventory search is proper.  Here, however, at the time they arrested the defendant, the police could have turned the vehicle over to its rightful owner rather than impounding it.  *Cf. United States v. Fort*, 313 Fed. App'x 665 (4th Cir. 2009) (finding that police had lawful custody of vehicle and that inventory search was valid where police made the decision to have vehicle towed and to subject it to inventory search *prior to* the time defendant's wife arrived at the scene).  The governmental interests discussed above in preventing theft, forestalling claims, and protecting the police are not implicated where the owner of the car is present at the time

---

[2] Pursuant to Federal Rule of Evidence 803(8)(A)(ii), the Court does not rely on this report as substantive evidence of the truth of the matters contained therein.

of the defendant's arrest.  Indeed, Ms. Stover could have taken the Accord and the police would have had no responsibility for the property therein.

Moreover, the officers' decision to impound the Accord and subject it to inventory violated Lancaster City Police Department regulations.  Specifically, the Lancaster City Police Department's policy regarding "traffic ancillary services" performed by police officers states that officers "may cause a vehicle to be towed" under one of several limited circumstances, including "[a]ny vehicle from which an officer makes an arrest and there is no responsible party to whom the arrestee can turn over the possession of the vehicle."  Def.'s Ex. 1, at p. 3.  Then, "[w]henever a vehicle is towed, the inventory and impoundment record will be completed by an officer and processed through normal administrative channels as a permanent record."  *Id.* at p. 4.  In other words, where a "responsible party," such as the vehicle's owner, is present, an officer does not have a basis for impounding the vehicle and subjecting it to inventory search.  *See Bertine*, 479 U.S. at 375 (noting that decision to impound must be based on "standard criteria and on the basis of something other than suspicion of evidence of criminal activity").

Based on the above, the Accord was not in the lawful custody of the officers at the time of the inventory search.  Consequently, the inventory search violated the defendant's rights under the Fourth Amendment.

## CONCLUSION

The Supreme Court has upheld inventory searches performed in accordance with standard police procedures where the vehicle is in lawful police custody at the time of the

search.  In this case, the vehicle's owner was present at the scene prior to the time the inventory search began, and the officers' decision to impound the vehicle and subject it to search violated their department's standard procedures.  Thus, at the time of the search, the vehicle was not lawfully in police custody.  Moreover, the governmental interests traditionally asserted in justifying an inventory search are much weaker here because the police could have avoided responsibility for the vehicle's contents and any danger to officers by turning the vehicle over to its owner at the scene of the defendant's arrest.  Consequently, the Court finds that the inventory search of the vehicle defendant McIlwain was operating violated the Fourth Amendment.  The evidence discovered during this search must be suppressed.

IT IS SO ORDERED.

October 26, 2012                                    Joseph F. Anderson, Jr.
Columbia, South Carolina                    United States District Judge